13912

HAPP BROS. & CO. v. J. O. JONES CO.

(176 S. E., 321)

*Messrs. Blythe & Bonham,* for appellant,

*Mr. Wilton H. Earle,* for respondent,

September 28, 1934.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This case comes before this Court on appeal by the defendant, J. O. Jones Company, a corporation, from judgment for the plaintiff, Happ Bros. & Co., a partnership composed of Lee M. Happ, Pinkus Happ and Morris Michael, in the county Court for Greenville County, in the sum of $400.-00, the amount of the plaintiff's alleged claim. The action is based on an account for merchandise sold and delivered to the defendant. The answer admitted the allegations of the complaint and pleaded waiver and estoppel. The case was

tried in said Court before his Honor, M. F. Ansel, Judge of said Court, and a jury, and, at the conclusion of the testimony, the plaintiff made a motion for direction of a verdict. This motion the Court granted, refusing defendant's motion for direction of a verdict.

The appellant's exceptions impute error to the trial Judge in overruling defendant's motion for a directed verdict in its favor and in granting plaintiff's motion for directed verdict on behalf of the plaintiff.

As stated by plaintiff's counsel at the beginning of the trial, the plaintiff's case being admitted by the pleadings, the defendant was entitled to the opening and reply, and, in response to the allegations contained in the answer, offered testimony to establish the following facts:

Admitting that the defendant is a corporation and that it purchased from the plaintiff goods to the value alleged in the plaintiff's complaint, offered proof that the defendant has been engaged in the mercantile business in Greenville, S. C., and Charlotte, N. C., for a number of years, selling clothing and shoes, etc., and that during the time had carried on a large business, but, on account of the depression and abnormal conditions during the past few years, had suffered a heavy loss and for this reason was unable to meet its obligations; and, according to the testimony of G. Heyward Mahon, Jr., an officer in this corporation, the only witness in the case, the board of directors of the defendant considered the advisability of liquidating the assets of the corporation and closing up its business, and thereafter its directors adopted this course and the said G. Heyward Mahon, Jr., for this purpose was appointed by the directors as liquidating agent to convert into cash the assets of the corporation and to pay the same out ratably among all of its creditors; and, after consideration, the said Mahon agreed to accept the appointment and undertook to liquidate the said institution. It further appears from the testimony of Mr. Mahon that in the early part of said month, to wit, January

11, 1933, all of the creditors of the defendant, including the plaintiff in this case, were duly notified of the arrangement and plan outlined by sending them a copy of the following letter:

"Greenville
"January 11, 1933.

"The directors of this organization have decided to dissolve the corporation and discontinue business.

"After having been in business for 26 years in Greenville and nearly four years in Charlotte, it is with very sincere regret that we announce this decision and you can be sure it was arrived at only after giving full consideration to the interests of our wholesale houses, many of whom we have done business with over a period of many years.

"Mr. G. Heyward Mahon, Jr., of Greenville, has been appointed to act as agent of the corporation for the purpose of converting into cash the assets of the corporation as promptly as may be possible, and distributing it ratably among its creditors.

"For the benefit of those who may not know Mr. Mahon we refer you to any bank in Greenville, to the Greenville Chamber of Commerce, or anyone else whom you may know here for information as to his integrity and reliability. The results of your inquiry will assure you, we believe, that the liquidation of the corporation will be handled in such a way that it will be to the best interests of all concerned.

"For your information we should also like to add that this step has been taken with the knowledge and consent of the largest creditor—Hart, Schaffner & Marx of Chicago—with whom you can communicate if you so desire.

"A stock liquidation sale is now in progress, special efforts are being directed to collect accounts receivable and just as rapidly as an accumulation of funds justifies a distribution will be made to creditors. In the meantime will you please forward to Mr. Mahon care of this company a complete itemized statement of your account for checking our

records and verifying the amount of our indebtedness to you.

"Yours very truly,

"J. O. Jones Co."

In this connection Mr. Mahon testified that while he could not state positively that plaintiff sent an itemized statement of plaintiff's account to the defendant, as requested, he thought all of the creditors had sent such statement. Thereafter, January 17, 1933, according to Ms. Mahon's testimony, another letter was sent to the creditors, including the plaintiff herein, the original of the same being mailed and addressed to Happ Bros., plaintiff herein, reading as follows:

"To the Creditors of J. O. Jones Company:

"As you were informed by letter of January 11, 1933, signed by J. O. Jones as President and Treasurer of J. O. Jones Co., that company decided to liquidate and discontinue business. This decision was reached only when it became apparent that this would be for the best interests of the creditors.

"It was concluded that a closing-out sale should be started immediately. This was done and the sale is now in progress, and up to this time its success has exceeded our expectations.

"I was appointed Liquidating Agent, and in this capacity I have been receiving and holding in a special account all funds coming in. Out of these funds there will be paid only the necessary operating and liquidating expenses, which I am endeavoring to hold to a minimum and the balance is to be distributed *pro rata* among all creditors.

"It will be necessary to hold in reserve some funds as there are certain contingent liabilities which must be disposed of before it can finally be determined the exact amount of the outstanding indebtedness. However, at this time I feel justified in paying a five per cent dividend, and am now

issuing checks for such amount. It will be my purpose as rapidly as possible to pay other dividends.

"Yours very truly,

"J. O. Jones Co.

"G. Heyward Mahon, Jr., Agent."

Mr. Mahon further testified that he mailed to the plaintiff, as well as to the other creditors, a 5 per cent. dividend, along with the above-mentioned letter, the amount sent plaintiff at that time being $20.48. On January 25, 1933, Mr. Mahon, according to his testimony, sent out another letter to the creditors, including the plaintiff, stating that the defendant was then able to send another check, from the closing-out sale, an additional 5 per cent. dividend, and with said letter sent to each of the creditors, including plaintiff, a check for same. In connection with said letter we call attention to the following statement contained therein:

"The closing out sale of merchandise was completed Saturday. This was done expeditiously, economically, and satisfactorily, we feel, and to the very best interests of all creditors. It will interest you to know that we secured $48,-000.00 for a $55,000.00 (at wholesale) stock in nine (9) selling days.

"All possible efforts are being put forth toward the collection of accounts receivable—and this will be pushed vigorously.

"The next move will be to dispose of the fixtures in the Greenville and Charlotte stores and to attempt to dispose of the lease in Charlotte and to sell the building in Greenville. We are anxious to secure for the creditors the very best possible price for these assets, and to that end we will ask that should you be interested or know of anyone who might be interested in the purchase of either the fixtures, the lease, or the building you notify us at once. Appraisals on all will be available."

It further appears from the testimony that on the 10th of February, 1933, Mr. Mahon, as said liquidating agent, sent

another 5 per cent. dividend check to each of the creditors, including the plaintiff. In the letter sent on that occasion Mr. Mahon stated he was trying to get a sale for the real estate and the fixtures and requested suggestions from the creditors. Thereafter, March 23, 1933, another letter was sent to the creditors stating that Jones Company was in position to pay an additional dividend of 3 per cent. and sent checks to all the creditors for said sum, including the plaintiff, and later, July 8, 1933, an additional dividend of 1½ per cent. was paid. According to the further testimony of Mr. Mahon, when a dividend was paid, he, as such liquidating agent, sent the same amount to each creditor, that is, the same *pro rata* sum, and after paying to the creditors the several amounts mentioned, all of the assets were exhausted except some store accounts receivable and a deposit in the People's State Bank of South Carolina. It also appears from the testimony that the real estate owned by the said Jones Company had been transferred to the mortgagees to be applied on mortgage debts; and that, as such liquidating agent, he had realized about all that could be realized from the assets of the said Jones Company, but stated further in his testimony that any additional amount realized would be paid out ratably to the creditors, including the plaintiff. The two last-mentioned dividends, 3 per cent. and 1½ per cent. were paid by the defendant, through its said agent, and received by the said creditors, including the plaintiff, after the commencement of this action against the defendant.

On cross-examination of Mr. Mahon he further testified that the capital stock of the defendant corporation was $200,000.00; that the amount of its indebtedness at the time of the liquidation was about $275,000.00; and at that time the defendant had on hand a stock of goods, including fixtures, amounting to the value of about $55,000.00. From the sale of the said stock of goods during the said liquidation sale, the sum of $48,000.00 was collected and later about $20,000.00 additional was realized from the sale of

fixtures and accounts; that there was a loss to the creditors of about $200,000.00. Mr. Mahon further stated in this connection that in view of the existing depressed conditions he thought he had done well with the assets of the said corporation.

It is the contention of the defendant, as set up in its answer, that the plaintiff received the payments mentioned above in full settlement of its claim against the defendant, and that the said dividend checks were received and accepted by the plaintiff and the other creditors with full knowledge that the defendant had a liquidation of its assets for the sole purpose of making and having a complete and full settlement with all of its creditors, and that each of its creditors, including the plaintiff, accepted the amounts paid to them as a full and final settlement of all claims against the defendant; and further, that the plaintiff by its conduct in the manner has waived any right it may have had to hold the defendant liable and is now estopped from setting up and recovering on said claim.

A careful study of the transcript of record in this case fails to convince us that the defendant has established its plea of waiver and estoppel. While we are of the opinion that probably the directors of the defendant corporation had in mind getting a settlement with its creditors by paying to them the amount of money received from the liquidating sale of its assets, the record fails to disclose proof that the directors of the defendant corporation took the proper steps to bind its creditors in this respect. It is clear that there was no assignment of the assets as contemplated by the statutory law of this state and we find no common-law agreement disclosed by the record between the parties to sustain the defendant's position. We find nothing in the record tending to show that the creditors, and especially the plaintiff herein, agreed to accept the amounts paid to them, or that would be paid to them, from the said liquidation sale as a final and complete settlement of the claims against the defendant

There is nothing contained in the letters referred to in the record informing the creditors that the amounts being sent to them from time to time were intended as complete and final settlement of their claims. We find no error in the trial Judge's refusal to grant defendant's motion for a directed verdict and in granting the plaintiff's motion for a directed verdict.

The exceptions are, therefore, overruled and the judgment of the lower Court affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.